IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

PENNY PRUDICH,

    Plaintiff,

v.                         CIVIL ACTION NO. 1:20-00019

ANDREW M. SAUL,
Commissioner of the
Social Security Administration,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

By Standing Order, this action was referred to United States Magistrate Judge Dwane L. Tinsley for submission of findings and recommendations regarding disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Tinsley submitted to the court his Proposed Findings and Recommendation ("PF&R") on September 25, 2020, in which he recommended that the court deny plaintiff's request to reverse defendant's decision (ECF No. 8), grant defendant's request to affirm defendant's decision (ECF No. 11), affirm defendant's final decision, and dismiss this action from the court's docket.

In accordance with 28 U.S.C. § 636(b), the parties were allotted fourteen days plus three mailing days in which to file objections to the PF&R. Plaintiff timely filed objections to

the PF&R.  (ECF No. 13.)  Defendant timely filed a response to
those objections.  (ECF No. 14.)  Plaintiff then moved for and
was granted permission to file a supplemental brief regarding
the potential effect on this case of the Fourth Circuit's recent
decision in Arakas v. Commissioner, Social Security
Administration, 983 F.3d 83, 102 (4th Cir. 2020).  (ECF No. 18.)
The court also granted defendant permission to respond to
plaintiff's supplemental brief.  (Id.)[1]

## I.   **Background**

On November 9, 2016, plaintiff Penny Prudich filed an
application for Social Security Disability Insurance Benefits,
alleging disability beginning on November 23, 2015, due to
stenosis, a history of back surgeries, low back arthritis,
depression, migraine headaches, and hand and wrist pain.  Upon
denial of her claim, she sought and obtained an administrative
hearing, which was held on November 14, 2018, before

---

[1] On October 15, 2020, plaintiff filed a "reply" (ECF No. 15)
citing Local Rule of Civil Procedure 7.1 (relating to motions
practice) as authority for doing so.  That rule does not apply.
Instead, Federal Rule of Civil Procedure 72(b)(2) applies, which
provides that a party may respond to another party's objections,
but has no provision for a "reply" to such a response.
Accordingly, the court will not consider ECF No. 15.

On January 27, 2021, plaintiff again filed a "reply" (ECF No.
21).  The court had granted plaintiff permission to file a brief
and defendant the opportunity to respond, but had made no
provision for a reply by plaintiff.  (See ECF No. 18.)  Neither
had plaintiff sought leave to file a reply.  (See ECF No. 16.)
Accordingly, the court will not consider ECF No. 21.

Administrative Law Judge Francine A. Serafin ("ALJ").   On
November 26, 2018, the ALJ issued a decision finding that
plaintiff was not disabled.   On November 13, 2019, the Appeals
Council denied review, thereby making the ALJ's decision final.
Claimant timely sought judicial review.

## II.  <u>Standard of Review</u>

Under § 636(b)(1), a district court is required to conduct
a de novo review of those portions of a magistrate judge's
report to which a specific objection has been made.   The court
need not conduct a de novo review, however, "when a party makes
general and conclusory objections that do not direct the court
to a specific error in the magistrate's proposed findings and
recommendations."   <u>Orpiano v. Johnson</u>, 687 F.2d 44, 47 (4th Cir.
1982); <u>see also</u> Fed. R. Civ. P. 72(b) ("The district court to
whom the case is assigned shall make a de novo determination
upon the record, or after additional evidence, of any portion of
the magistrate judge's disposition to which specific written
objection has been made in accordance with this rule.").

Federal courts are not tasked with making disability
determinations.   Instead, they are tasked with reviewing the
Social Security Administration's disability determinations for
(1) the correctness of the legal standards applied; and (2) the
existence of substantial evidence to support the factual
findings.   <u>Myers v. Califano</u>, 611 F.2d 980, 982 (4th Cir. 1980);

3

see also Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340
(4th Cir. 2012).  Substantial evidence is "such relevant
evidence as a reasonable mind might accept as adequate to
support a conclusion."  Biestek v. Berryhill, 139 S. Ct. 1148,
1154 (2019).  "It consists of more than a mere scintilla of
evidence but may be somewhat less than a preponderance."  Laws
v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).  Substantial
evidence is not, however, "[w]itness testimony that's clearly
wrong as a matter of fact," "[f]alsified evidence,"
"[s]peculation," or "conclusory assertions."  See Biestek 139 S.
Ct. at 1159 (Gorsuch, J., dissenting).

**III. Discussion**

     Plaintiff objects to the PF&R's rejection of each of her
arguments and renews those arguments in her objections.  She
argues that the ALJ erred by (1) failing to pose hypotheticals
that accurately encompassed her limitations; (2) improperly
weighing her subjective complaints; (3) improperly weighing her
treating physician's opinions; and (4) insufficiently
articulating the ALJ's review of the medical evidence.[2]

---

[2] As noted above, after the Fourth Circuit Court of Appeals
issued its opinion in Arakas, plaintiff sought and obtained
permission from the court to file a supplemental brief on that
opinion's potential impact on this case.  Plaintiff develops a
new objection in her supplemental brief.  She argues that the
ALJ erred by requiring objective medical evidence to support her
subjective symptoms.  Unlike her original objection to the ALJ's
treatment of her subjective complaints, which was a substantial-

4

The thoroughness of the 35-page PF&R reflects a great deal of diligent attention to this case on the part of the Magistrate Judge; nevertheless, the court finds merit in plaintiff's third objection.

### a. **Hypotheticals**

Plaintiff maintains that the ALJ's hypotheticals to the vocational expert ("VE") ran afoul of the rule that such hypotheticals must include all impairments that the claimant has.  See Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Vocational experts must adequately understand what claimants' "abilities and limitations" are; otherwise, their opinions about such claimants are "not particularly useful," see id. at 51, which means that they do not amount to "substantial evidence." Riley v. Chater, 57 F.3d 1067, *3 (4th Cir. 1995).  This is an important but easily overstated rule.  All it requires is that the hypothetical accurately describe the claimant's residual functional capacity ("RFC").  See Fisher v. Barnhart, 181 F. App'x 359, 364 (4th Cir. 2006).  That being done, the hypothetical is "unimpeachable."  Id.

---

evidence challenge, this is a proper-legal-standards objection. See Arakas, 983 F.3d at 98 (describing error of requiring objective evidence to support subjective symptoms as application of incorrect legal standard).  Because plaintiff did not raise this objection in her objections to the PF&R, and because the court did not grant leave to raise new objections in the supplemental brief, the court will not consider this objection.

The ALJ accurately communicated her RFC findings to the VE, so plaintiff's challenge to the hypotheticals is really a challenge to the RFC in disguise.  See Rutherford v. Barnhart, 399 F.3d 546, 554 n.8 (3d Cir. 2005) (explaining why arguments like this one "are really best understood as challenges to the RFC assessment itself.").  Plaintiff argues that (1) the need to lie down during the day and (2) absenteeism should have been included in the hypotheticals.  The court will not discuss the first alleged limitation (the need to lie down) in this section because it implicates the treating physician rule, which the court discusses in another section, below.  The court will address the absenteeism argument, however, which does not implicate the treating physician rule.  The court concludes that the absenteeism argument lacks merit.

Plaintiff argues that it was error not to include absenteeism in any hypothetical to the VE.  As mentioned, this is best understood as a challenge to the RFC.  That is why hypotheticals are objectionable only if they fail to include credibly established limitations.  See id. at 554; see also Manley v. Berryhill, No. 2:17-CV-02293, 2018 WL 3423821, at *3 (S.D.W. Va. July 16, 2018).  Plaintiff has the burden to credibly establish limitations, and she did not come close to carrying that burden as to absenteeism.

Plaintiff appears to proceed on the faulty premise that if the record shows more than one monthly medical appointment in the past, that is prima facie evidence of absenteeism, and the burden shifts to defendant to prove that the appointments will not result in absenteeism.  Equating medical appointments in the past with absenteeism is a mistake; the claimant has the burden to establish that medical appointments necessary for treatment in the future will result in absenteeism.  See Swafford v. Comm'r of Soc. Sec., No. 1:12CV19, 2013 WL 1196590, at *1 (S.D. Ohio Mar. 25, 2013). ("[E]vidence of frequent medical appointments alone is not enough.  Instead, there must be evidence such as a medical source opinion about the likelihood of absenteeism caused by the claimant's impairments and the need for treatment during working hours."); Goodman v. Berryhill, No. C17-5115 BAT, 2017 WL 4265685, at *3 (W.D. Wash. Sept. 25, 2017), aff'd, 741 F. App'x 530 (9th Cir. 2018) ("[T]o be disabling, the frequency of medical treatment must be necessitated by the medical condition and be substantiated by the evidence.").

Plaintiff states that her medical appointment merely "*could have*," (ECF No. 13, at 4) (emphasis in original), been a limitation on her ability to perform work and says that the record establishes "potential absenteeism," (Id. at 6). Plaintiff's burden required showing more.  While the likelihood

7

of absenteeism need not be proved to a certainty, the possibility of a limitation is far different from a credibly established limitation.  For example, a claimant who shows a pattern of frequent, unexpected trips to the emergency room to treat an ongoing condition likely establishes an absenteeism limitation, see Payne v. Comm'r, Soc. Sec. Admin., No. CIV. SAG-14-1015, 2015 WL 412923, at *1 (D. Md. Jan. 29, 2015).  Another example is a claimant who shows the need to receive biweekly injections that require several hours to administer.  Payne-Hoppe v. Comm'r of Soc. Sec., No. 1:11-CV-0097, 2012 WL 395472, at *16 (S.D. Ohio Feb. 7, 2012), report and recommendation adopted, No. 1:11-CV-97, 2012 WL 709274 (S.D. Ohio Mar. 5, 2012).  ALJs are not required to assume facts for which there is no evidence – here, that plaintiff's regularly scheduled appointments would result in absenteeism.  The one may lead to the other, but contrary to plaintiff's argument, it was not the ALJ's burden to disprove the connection, but plaintiff's burden to prove it.  Jeffries v. Berryhill, No. 4:16 CV 18 JMB, 2017 WL 365439, at *6 (E.D. Mo. Jan. 25, 2017) ("[I]t was Plaintiff's burden to prove RFC, not the ALJ's, and Plaintiff did not offer any proof as to the number of days that she must miss due to her illnesses." (citation omitted)); Bray v. Comm'r of Soc. Sec., No. 1:13-CV-00040, 2014 WL 4377771, at *2 (S.D. Ohio Sept. 3, 2014) ("Restrictions on a claimant's ability to sustain full-

time work, due to the frequency of appointments, would fall within the analysis of her RFC on which she maintains the burden of proof.").

Furthermore, plaintiff is mistaken that VE testimony was necessary on this issue.  VE testimony would be necessary if it were credibly established that plaintiff's treatment would result in absenteeism.  The issue at that point – whether such absenteeism would preclude employment – would be within a VE's expertise.  But it never got to that point here because absenteeism was never credibly established.  Plaintiff's burden was to establish what future treatment was necessary and to connect receiving such treatment to absenteeism.  This is an area where a medical opinion, not a vocational opinion, is very helpful.  See, e.g., Peters v. Astrue, No. CIV.A. 1:08-CV-203, 2009 WL 6326804, at *11 (N.D.W. Va. Sept. 29, 2009), report and recommendation adopted sub nom. Peters v. Comm'r of Soc. Sec. Admin., No. CIV.A. 1:08CV203, 2010 WL 1369245 (N.D.W. Va. Mar. 31, 2010) ("Plaintiff argues that her history of medical appointments demonstrates that she would be unable to work full-time.  However, no doctor opined that Plaintiff is unable to work because of numerous doctor appointments.  Plaintiff does not rely on a medical opinion that she is unable to work due to frequent absenteeism, but instead she presents her history of appointments in support of her argument.").  Doctors – not VEs –

9

are the experts on the extent of claimants' necessary future treatment, including details like the number and duration of treatment visits, the hours when they must take place, and the effects of such treatment.[3]

Here, plaintiff did not meet her evidentiary burden, either with a doctor's opinion or otherwise.  She did not establish with any reasonable specificity the extent of treatment she needs in the future or that the "mechanics of treatment," see SSR 96-8p, would necessitate missing work.  To prove future appointments, she merely points to the medical appointments memorialized in the record and says that the proof of absenteeism is self-evident.  To rely on past appointments to predict future appointments, however, there must be evidence that the one is a reliable indicator of the other.  Lara v. Berryhill, No. 4:16-CV-00564-PLC, 2018 WL 1744534, at *3 (E.D. Mo. Apr. 11, 2018).

Courts have consistently rejected the argument that, to establish an absenteeism limitation, all a claimant needs to do is point to a history of medical appointments in the record. See Simpson v. Comm'r of S.S.A., No. CIV.A. 1:09-02731, 2011 WL 1261499, at *2 (D.S.C. Mar. 31, 2011) ("Even if she has frequent

---

[3] Although presenting a medical opinion is not the only way to prove an absenteeism limitation resulting from necessary future medical treatment, it would appear to be the surest way of doing so in most cases.

medical appointments, Plaintiff can still have the ability and aptitude necessary to work and perform the above-stated tasks and those similar to them.  Moreover, the concern about absences due to appointments is speculative.  Plaintiff's speculation that she will miss work frequently for medical appointments is insufficient to demonstrate a limitation on her physical or mental ability to perform basic work activities."); Peters, 2009 WL 6326804, at *11 (see parenthetical quotation above); Stone v. Berryhill, No. 17-CV-3193, 2018 WL 5300381, at *19 (C.D. Ill. Oct. 24, 2018) ("The ALJ is not required to speculate.  Stone is speculating on what she would have done had she been working. If Stone had been working, she might have scheduled her medical appointments on her days off or combined appointments.  No one knows.  No one knows because this argument is all speculation. The ALJ did not err in omitting such speculation from her decision.  If numbers of doctors' visits alone could establish disability, claimants would only need to schedule enough visits."); Martin v. Berryhill, No. 7:16-CV-260-KKC, 2018 WL 1571906, at *4 (E.D. Ky. Mar. 30, 2018) ("Martin's remaining arguments are both underdeveloped and unavailing.  Martin claims the ALJ failed to properly consider her absenteeism necessitated by her doctor's appointments.  But Martin has not identified any evidence on the record that the length of these appointments would require her to miss work."); Jeffries, 2017 WL 365439, at

11

*5–6 ("Although Plaintiff argues that it is 'incontrovertible' that she will miss numerous days, the record does not support this argument and substantial evidence supports the ALJ's RFC determination.  At best, Plaintiff proved how many times she has visited a doctor, but she did not show that each doctor's visit would result in her missing an entire day of work."); Mullin v. Colvin, No. 14-3217-CV-S-REL-SSA, 2015 WL 5096028, at *13–14 (W.D. Mo. Aug. 27, 2015) ("In this case, there is no evidence that plaintiff would be unable to schedule multiple medical appointments on the same day or schedule appointments before or after her normal work hours.  There is no evidence that plaintiff's impairments or treatment will likely require her to miss 10 to 14 full days of work per year as plaintiff suggests in her brief.  As a result, plaintiff's arguments on this basis are without merit."); Swafford v. Comm'r of Soc. Sec., No. 1:12CV19, 2013 WL 1196590, at *1 (S.D. Ohio Mar. 25, 2013) (see parenthetical quotation above).

Plaintiff sets forth no case law confronting the issue of absenteeism, and her reliance on an overly generous interpretation of the general rule that hypotheticals set forth all limitations is unavailing.  The great weight of persuasive authority is against plaintiff on this issue, and court finds no good reason to strike out against that authority.

To show that medical appointments would result in missed work, plaintiff argues on appeal to this court that some appointments are up to an hour and forty minutes from her home. Even if so, she did not make this argument to the ALJ. While ALJs are required to consider all the evidence, they are not required to calculate distances between claimants' homes and doctors' offices when claimants never raise the issue. The ALJ's review of the evidence was not deficient for failure to make such a calculation. Moreover, for the reasons explained above, it is insufficient merely to show that some past appointments required over an hour of travel.

For the foregoing reasons, plaintiff's objection that the ALJ's hypotheticals were defective for failure to include absenteeism is **OVERRULED**.[4]

### b. Subjective Complaints

Plaintiff also renews her argument that substantial evidence does not support the bases on which the ALJ discounted her subjective symptoms. More specifically, she argues that by failing to account for her testimony about the limited, non-daily extent of her activities and by misstating the record, the

---

[4] The court does not decide whether failure to include the need to lie down or take breaks during the day in the hypotheticals was error because this depends on whether the medical opinion on which this alleged limitation is based should have been given more weight, which is an issue requiring remand, as discussed below.

ALJ reached a conclusion unmoored from substantial evidence: that the severity and effects of plaintiff's symptoms were not as great as alleged.

When ALJs analyze whether claimants' activities are inconsistent with their subjective complaints, ALJs must consider claimants' qualifying statements about their activities. Arakas, 983 F.3d at 99 (4th Cir. 2020); Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018); Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 263 (4th Cir. 2017). But ALJs are obviously not bound by every qualifying statement. Linkous v. Astrue, No. 4:10CV16, 2011 WL 652534, at *10 (E.D. Va. Jan. 19, 2011), report and recommendation adopted, No. 4:10CV16, 2011 WL 642958 (E.D. Va. Feb. 10, 2011). By regulation, ALJs are to accept claimants' statements only to the extent that they are consistent with the record. See 20 C.F.R. § 404.1529SSR ("We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work."); see also SSR 16-3p ("We will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with objective medical evidence and the other evidence."). Because qualifying

14

statements are essentially symptoms, ALJs assess qualifying statements for consistency with the record in the same way they assess claimants' other symptoms.  See 20 C.F.R. § 404.1529.

In Brown, the ALJ "did not acknowledge" the claimant's qualifying statements and did not explain how the claimant's activities translated into the ability to work full-time.  873 F.3d at 263.  Similarly, in Arakas, the ALJ "did not mention or address" myriad qualifying statements.  983 F.3d at 100. Importantly, however, "there is a stark difference between an ALJ not explicitly mentioning every scintilla of evidence . . . as compared to an ALJ selectively citing certain pieces of evidence to present a false picture of the claimant's abilities, as the ALJ did in Arakas and similar decisions."  Walker v. Saul, No. 2:20-CV-00196, 2021 WL 342570, at *9 (S.D.W. Va. Jan. 6, 2021), report and recommendation adopted, No. 2:20-CV-00196, 2021 WL 329208 (S.D.W. Va. Feb. 1, 2021).

Here, although the ALJ's evaluation of the subjective symptoms was proficient.  At the outset, it is true that the ALJ made at least one misstatement:  that plaintiff drove to Disney World for a family vacation (she actually flew).[5]  This is a

---

[5] As the PF&R points out, there is some evidence in the record regarding plaintiff crocheting, doing yoga, and using an elliptical, so although plaintiff testified that she did not do these activities (or do them any longer), it is not obvious that the ALJ misstated the record.  Based on its de novo review of the record, however, the court determines that evidence is thin

pretty glaring error because plaintiff testified that driving "wasn't even a consideration," (Tr. at 49.), and the ALJ did not acknowledge that testimony in finding that plaintiff drove.

The error is harmless, though, because as the PF&R points out, it was reasonable for the ALJ to conclude that plaintiff's ability to travel – by land or by air – was inconsistent with her statements regarding her difficulties with mobility and with sitting. While the ALJ got an important detail wrong, it is not as if she was mistaken about the Disney World trip completely. Thus, it does not appear at all likely that the outcome would have been different without this error. Even taking the statement about driving to Florida out of the equation, substantial evidence still supports the RFC determination.

As for plaintiff's qualifying statements regarding her activities, unlike the ALJs in Brown and Arakas, the ALJ here acknowledged and analyzed them. In doing so, she found the qualifying statements to be largely inconsistent with how plaintiff had described her activities to her doctors. True, after recounting plaintiff's limiting statements, the ALJ did not explicitly repeat them and list the portions of the record with which they were inconsistent. But substantial evidence

---

enough as to yoga and elliptical use that it will assume for this decision that plaintiff did stretches, but not yoga, and that she used only the recumbent bike function on her combination elliptical/recumbent bike. (See Tr. at 65.)

16

still supports findings.  Moreover, as to the qualifying
statement about her childcare activities (perhaps the most
important one), the ALJ did repeat it and contrasted it with
plaintiff's pre-hearing descriptions of the activity, which
omitted this qualifying statement.[6]  In short, the ALJ
proficiently accounted for both the type of activities and their
extent, giving adequate consideration to plaintiff's qualifying
statements.

Plaintiff also objects that the ALJ failed to explain how
the activities she reported engaging in (such as doing
housework, caring for a toddler, taking out-of-town trips,
exercising, and driving) amount to the ability to engage in
full-time work, citing Brown and Arakas.  In those cases, the
Appeals Court noted that the ALJs did not explain how the
activities they cited amounted to the ability to work full-time.
Arakas, 983 F.3d at 100; Brown, 873 F.3d at 263.  Those cases
make clear that it is insufficient merely to point to minimal
daily activities as proof that a claimant is not disabled.  As
Arakas explains, claimants should not forfeit Social Security

---

[6] Plaintiff points out that one medical note does record that
plaintiff needed help caring for her grandson.  But this note
does not contradict the ALJ's observation that at other times,
she did not state that she needed help.  In fact, that she
qualified this activity once – but not at other times –
strengthens the ALJ's conclusion that she sometimes was able to
engage in this activity on her own.

benefits for trying to "participate in the everyday activities of life."  983 F.3d at 101.

The ALJ's decision here does not rely solely on plaintiff's participation in minimal daily activities to determine that she can still work.  Instead, the ALJ explains that she relies on the following to find plaintiff's symptoms "not entirely consistent," (Tr. at 18), with the record:

1. Plaintiff was able to travel various places, including Florida (twice – once to Tampa and once to Disney World); the Smoky Mountains; Roanoke; Lexington, Kentucky; and the beach.

2. Plaintiff failed to attend over a third of her physical therapy appointments.

3. Treatment was generally successful for plaintiff.

4. Plaintiff was able to care for a young child two days a week.

5. Plaintiff attended meetings, exercised, and put together flower arrangement and crafts for a wedding.

Plaintiff had the burden of proof on the RFC.  She made statements regarding subjective symptoms in support of that burden.  The ALJ was required to evaluate the consistency of those statements with the record and to explain her findings sufficiently.  She did so.  She did not merely list minimal, basic activities.  Rather, she found that being able to do

18

things like take multiple trips to Florida, care for a toddler
two days a week, exercise, and attend meetings was inconsistent
with plaintiff's description of her symptoms.  She explained
that caring for a toddler, in particular, "can be quite
demanding both physically and emotionally." (Tr. at 18.)  She
explained that plaintiff's treatment had helped significantly.
Brown and Arakas require that ALJs' findings be adequately
explained, which does not mean merely listing basic daily
activities as if they were self-evident of a lack of disability.
Those cases do not, however, preclude any reliance on claimants'
activities as part of ALJs' explanations.  The ALJ's explanation
here appropriately incorporated plaintiff's activities into a
sufficiently comprehensive explanation that is supported by
substantial evidence.

### c. **Medical Evidence Evaluation**

Plaintiff also takes issue with the ALJ's finding that
plaintiff's treatment had "been generally successful in
controlling her symptoms."  (Tr. at 18.)  She argues the record
does not support this finding.  If by "generally successful,"
the ALJ meant that treatment had completely eliminated her
symptoms, then plaintiff would be correct.  But the court reads
this to mean only that treatment had helped plaintiff manage her
symptoms significantly.  Substantial evidence, including
plaintiff's medical records from her primary care physician and

pain specialist, supports such a finding.  (See Tr. at 17, 325, 335, 355, 364, 389, 415, 463, 496.)

Plaintiff also objects that the ALJ insufficiently reviewed her medical records.  Specifically, she states that the records of Drs. Thymius and Orphanos "are either not discussed at all or barely acknowledged."  (ECF No. 13, at 22.)  Plaintiff says that the articulation falls short of the requirements of C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (that the assessment must be "based on all of the relevant medical and other evidence") and SSR 96-8p (that the assessment "[c]ontain a thorough discussion and analysis of the objective medical and other evidence).  But plaintiff identifies no binding or persuasive case law supporting her interpretation of these requirements, which would require an individualized discussion of the records from each medical provider.

In the Fourth Circuit, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence."  Reid v. Commissioner of Social Sec., 769 F.3d 861, 865 (4th Cir. 2014).  Arakas does not change this general rule.  See Walker, 2021 WL 342570.  The ALJ stated that she considered all the evidence of record.  Having so stated, the court should "take her at her word."  Id. at 865; see also Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005) ("[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its

20

word when it declares that it has considered a matter.");
Christina W. v. Saul, Case # 4:19-cv-00028-PK, 2019 WL 6344269,
*4 (D. Utah Nov. 27, 2019) ("While the ALJ must consider all the
evidence, she need not recite each piece of evidence she has
considered.  The ALJ stated that she carefully considered the
entire record and the Court can take her at her word.").
Moreover, the ALJ cited the records of plaintiff's treatment
with Drs. Thymius and Orphanos in the FRC assessment.  Although
her analysis does not name these doctors or recount the content
of the records in detail, the analysis shows that the ALJ was
aware of these records and considered them.  Plaintiff is not
arguing that these providers offered opinions that the ALJ
insufficiently considered; rather, she is objecting to the
absence of a summation of medical records on a provider-by-
provider basis.  That is not required under the relevant
regulations and policy ruling.

    Therefore, this objection is **OVERRULED**.

### d. <u>Treating Physician Rule</u>

    Finally, plaintiff also contends that the ALJ's weighing of
the medical opinion evidence was erroneous.  Specifically, she
says that the ALJ erred by "failing to give significant, if not
controlling weight," to Dr. Lohuis's opinions that plaintiff (1)
"has to lie down multiple times per day due to increase in pain
with activity"; (2) has to take frequent and unpredictable

breaks from sitting, standing, or lying; and (3) "has been unable to sustain gainful employment due to relentless back and leg pain." (Tr. at 622). Because the ALJ failed to provide a sufficient explanation for giving no weight to Dr. Lohuis's opinions, the court concludes that this objection has merit.

The treating physician rule is gradually disappearing. It has not applied to new claims in nearly four years. See 20 C.F.R. § 404.1520c. For claims filed on or after March 27, 2017, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimants'] medical sources." Id. But to those claims to which the treating physician rule still applies, it is a "robust" force to be reckoned with. See Arakas, 983 F.3d at 107. And it applies to this claim because plaintiff filed it on November 9, 2016, before the March 27, 2017 cutoff.

The rule "requires that ALJs give 'controlling weight' to a treating physician's opinion on the nature and severity of the claimant's impairment if that opinion is (1) 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and (2) 'not inconsistent with the other substantial evidence' in the record." Id. at 106. In other words, a treating physician's medical opinion must be "based on medically unacceptable clinical or laboratory diagnostic techniques or

22

. . . <u>contradicted</u> by the other substantial evidence in the record," to be given anything less than controlling weight.  <u>Id.</u> at 107.

That said, not all opinions by doctors qualify for the rule.  Only opinions that are "on the issue(s) of the nature and severity of [claimants'] impairment(s)" qualify.  20 C.F.R. § 404.1527(a), (d)(2).  Also, opinions on "issues reserved to the Commissioner," are expressly disqualified and indeed are "not medical opinions" at all.  20 C.F.R. § 404.1527.

Dr. Lohuis's opinion about plaintiff's inability to sustain gainful employment is not a medical opinion.  It is an opinion about whether plaintiff is disabled; thus, the treating physician rule does not apply, and the opinion cannot be given controlling weight.  The ALJ evaluated this opinion and found it to be vague and unexplained.  Accordingly, plaintiff's argument fails as to this opinion.

As to the opinions about plaintiff needing to lie down and take frequent and unpredictable breaks, however, it would appear that the treating physician rule does apply.  Defendant points out that the RFC is an issue reserved to the Commissioner, but defendant stops short of explicitly arguing that these are opinions on reserved issues.  Moreover, the regulations are against such an argument:

> Medical opinions are statements from acceptable
> medical sources that reflect judgments about the
> nature and severity of your impairment(s), including
> your symptoms, diagnosis and prognosis, what you can
> still do despite impairment(s), and your physical or
> mental restrictions.

20 C.F.R. § 404.1527.  Dr. Lohuis's opinions would appear
to be "judgments about" plaintiff's "physical or mental
restrictions."  Id.

The question, then, is whether the opinions are "well-
supported by medically acceptable clinical and laboratory
diagnostic techniques and [are] not inconsistent with the
other substantial evidence."  Id.  The ALJ's decision does
not tell us.  It says that the opinions are "general" and
that the letter that expresses them does not cite the
evidence that supports the opinions.  (Tr. at 19.)  While
this analysis gestures toward a finding that the opinions
are not well-supported by clinical and laboratory
diagnostic techniques, it equivocates, creating unsteady
footing on which to affirm.  Being "general" is not the
same as being unsupported, and there is no requirement that
the support for the opinions be cited in the letter itself.
The short shrift makes judicial review impossible.  See
DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983)
("Judicial review of an administrative decision is
impossible without an adequate explanation of that decision

by the administrator."); but see Poole v. Saul, 462 F.
Supp. 3d 137, 151 (D. Conn. 2020) (court was "able to glean
from the record the ALJ's rationale for assigning little
weight to" a treating physician's opinion").

In Arakas, the Fourth Circuit rephrased the treating
physician rule as follows:  "[T]he [treating physician's]
opinion must be given controlling weight unless it is based
on medically unacceptable clinical or laboratory diagnostic
techniques or is contradicted by the other substantial
evidence in the record.  983 F.3d at 107 (emphasis in
original).  Even read liberally, the ALJ's brief analysis
here is insufficient to pass muster, especially under this
phrasing of the treating physician rule.

Defendant does not commit to an argument to the
contrary.  Instead, defendant argues that the ALJ's
analysis passes muster because it relies on the lack of
"supportability."  There are two steps involved, however,
when an ALJ determines that a treating physician's medical
opinion does not deserve controlling weight.  The first is
to explain why it is based on unacceptable diagnostic
techniques or is contradicted by other substantial
evidence; that done, the second is to analyze it under the
factors (of which supportability is one).  See 20 C.F.R.
§ 404.1527 ("When we do not give the treating source's

medical opinion controlling weight, we apply [certain
factors] in determining the weight to give the medical
opinion.").

The ALJ skipped step one.  Given the importance of the
treating physician rule, which the Fourth Circuit recently
reiterated in no uncertain terms, the ALJ must reasonably
articulate why it does not apply; otherwise, it cannot pass
judicial review in this circuit.  Finally, it is noteworthy
that the ALJ not only declined to accord Dr. Lohuis's
opinion controlling weight, she declined to give it <u>any</u>
<u>weight at all</u>.

Therefore, remand is necessary, and the court **SUSTAINS**
this objection.

## IV.  <u>Conclusion</u>

For the reasons set forth above, the court **SUSTAINS**
plaintiff's objection to the PF&R's conclusion regarding the
ALJ's decision to give no weight to certain opinions by Dr.
Lohuis.  The court **OVERRULES** plaintiff's other objections.  The
court **GRANTS** plaintiff's Motion for Judgment on the Pleadings
(ECF No. 8) in part:  specifically, the court **REVERSES** and
**REMANDS** defendant's decision pursuant to sentence four of 42
U.S.C. § 405(g) for further proceedings consistent with this
opinion.  The court **DENIES** defendant's request to affirm his

decision (ECF No. 11) and **DISMISSES** this case from the court's active docket.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to all counsel of record and any unrepresented parties.

**IT IS SO ORDERED** this 11th day of March, 2021.

ENTER:

David A. Faber
Senior United States District Judge